WILLIAM F. LEWIS *et al.*

*vs.*

THE SAINT PAUL AND SIOUX CITY RAILROAD COMPANY.

Consideration of the facts appearing in this case with reference to their tendency to show a conversion of certain wheat claimed by plaintiffs.

*Dorr vs. Mickley,* 16 *Minn.* 25, followed upon the point, that a new trial will not be granted where it is evident that it will not change the result of a former trial.

Action for the conversion of certain wheat, the property of the plaintiffs. At the trial in the district court for Blue Earth county, it appeared that the plaintiffs were the holders of cer-

tain instruments issued by the defendant, each purporting to be a receipt for the quantity of wheat specified therein, and each signed by the defendant's inspector at the elevator at Mankato. These receipts were known as "inspector tickets." In November and December, 1870, the plaintiffs delivered to one J. G. Williamson, the defendant's elevator agent at Mankato, inspector tickets to the amount of 1,684 30-60 bushels of wheat, and received from him in exchange receipts or tickets for 34 30-60, 1,500, and 75 bushels, respectively. These tickets purported to be " Exchange Tickets," and to be issued by the defendant, and were signed " J. G. W. Inspector elevator agent." The plaintiffs were also the holders of an " inspector ticket," issued May 27, 1871, for 46 10-60 bushels. On the 27th June, 1871, the plaintiffs presented their tickets to the defendant's elevator agent at Mankato, and demanded the quantity of wheat specified therein ; but the agent refused to deliver the wheat on any of the tickets.

On behalf of the defendant its general freight agent, having charge of all its elevators, testified that the inspector, and in his absence the elevator agent, had authority to issue only " inspector tickets" for wheat received at the elevator, and " surrender vouchers," when the inspector tickets were surrendered, and the wheat withdrawn for shipment on its railway ; but that no officer or agent of the company had authority to issue " exchange tickets" ; that all the inspector tickets issued at the Mankato elevator from the 1st September, 1870, to the 31st May, 1871, had been surrendered to the defendant, and honored by the delivery of the wheat they called for, (except the ticket for 46 10-60 bushels held by the plaintiffs,) before the commencement of this action ; that Williamson was discharged on the 26th January, 1871, and the defendant first learned of the issuance of the " exchange tickets" on the 6th February, 1871.

The jury found a verdict for the plaintiffs, and the defendant appeals from an order refusing a new trial.

E. C. PALMER and SEVERANCE & PITCHER for Appellant.

JAMES GILFILLAN and DANIEL BUCK for Respondents.

*By the Court.*—BERRY, J.—We agree with plaintiffs' counsel that it is quite immaterial whether or not Williamson had authority to issue the "exchange tickets." The gist of the action is the conversion of plaintiffs' wheat by defendant, and the important questions are, did the wheat belong to plaintiffs? and did defendant convert the same by refusing to deliver it on proper demand?

As to the fact that plaintiffs were the holders and the owners, general or special, of "inspector tickets," calling for the quantity of wheat claimed in this action, there is really no controversy. We think the testimony shows that the general property of all these "inspector tickets," and of the wheat represented thereby, was in plaintiffs. If, however, it be admitted that they held part of these tickets and wheat as collateral security only, they would still have a special property in such part, which, as against the defendant, (who claims no general property therein,) would entitle plaintiffs to recover the full value of such part, if the conversion was established.

The property of the "inspector tickets," and of the wheat represented by the same, being in plaintiffs, remains in plaintiffs unless divested in some way. The tickets are mere receipts—symbolical evidences of property. They have a value, and pass from hand to hand, but only as representing and calling for the quantities of wheat therein specified. The transfer of such tickets is a usual way of transferring the property in the wheat called for by the same. But it is one

Lewis et al. v. The St. Paul & Sioux City Railroad Co.

thing to sell and transfer them in the ordinary course of business, with the intent and for the purpose of selling and transferring the property in the wheat represented by them, and another and quite different thing to surrender them to the defendant, or, as in this case, to defendant's elevator agent, (who is authorized to receive them,) without making any sale of them, and without any intent on the part of either party that such surrender shall operate to transfer or divest plaintiffs' property in the wheat represented by the surrendered tickets. That the " inspector tickets" were in this instance surrendered without any such intention on the part of plaintiffs or defendant, there can be no room for question ; and it is obvious that the surrender, under such circumstances, would not divest plaintiffs of their property in the wheat.

It is, therefore, as before remarked, entirely immaterial whether the " exchange tickets" were issued by Williamson with or without authority. Irrespective of them, the case shows that the property in the wheat was in the plaintiffs, and there is nothing to show that they were ever divested of the same.

There being no controversy as to the fact that the wheat was in the possession of defendant, that its delivery was properly demanded and was refused, and its value being shown, the plaintiffs were clearly entitled to recover. The fact that defendant has already paid the " inspector tickets," which were delivered up by plaintiffs to defendant's elevator agent, by delivering to some person, other than the plaintiffs, the quantity of wheat called for by the same, is an affair between defendant and its agent, with which plaintiffs have no concern. They are not answerable for *his* fidelity to his employers.

These views dispose of the case, and lead to the affirmance of the order denying a new trial, without imposing upon us

any necessity to answer in detail most of the points made by defendant.   Even if it be admitted that some of defendant's exceptions to testimony and instructions were well taken in point of law, this is a case in which we have no hesitation in disregarding such exceptions, upon the ground that, upon the uncontroverted facts of the case, it is evident that a new trial would not change the result of the trial which has already taken place.   *Dorr vs. Mickley,* 16 *Minn.* 25.

Order denying new trial affirmed.